UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN W. MCGILL,<br><br>*Plaintiff,*<br><br>v.<br><br>GARY LANIGAN,<br><br>*Defendant.* | Civil Action No. 13-7386 (JMV)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiff alleges that pursuant to 42 U.S.C. § 1983, the Commissioner of the New Jersey Department of Corrections is responsible for prison conditions that caused Plaintiff to develop Bell's palsy. This matter comes before the Court on motions for summary judgment filed by Defendant Gary Lanigan, D.E. 37, and Plaintiff John W. McGill, D.E. 39. Both motions are brought pursuant to Federal Rule of Civil Procedure 56.[1] The Court reviewed submissions made in support of the motions and considered the motions without oral argument pursuant to Fed. R.

---

[1] Defendant's brief in support of his motion for summary judgment will be referred to hereinafter as "Def. Br." D.E. 37; Plaintiff's brief in support of his motion for summary judgment will be referred to hereinafter as "Pl. Br." D.E. 39; and Defendant's opposition brief will be referred to hereinafter as "Def. Opp. Br." D.E. 44. In addition, Plaintiffs amended complaint will be referred to hereinafter as "Pl. Am. Compl." D.E. 2. Defendant's answer will be referred to hereinafter as "Def. Answer" D.E. 15.

    The Court will refer to D.E. 39 as Plaintiff's brief in support of his motion for summary judgment ("Pl. Br.") because Plaintiff's papers take the form of a Rule 56 motion. However, Plaintiff's brief functionally operates as an opposition brief to Defendant's brief in support of his motion for summary judgment. Plaintiff reiterates many of his claims, however he chiefly rebuts Defendant's argument that Plaintiff has not shown that exhausted his administrative remedies. Pl. Br. at 3-5.

Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's cross-motion for summary judgment is **DENIED**.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual Background

#### i. Bell's Palsy Diagnosis

On December 4, 2011, while Plaintiff was incarcerated at East Jersey State Prison, he noticed that the left side of his face had become immobilized. Pl. Am. Compl. at 6. Thinking he had suffered a stroke, Plaintiff reported his condition to the medical department and was diagnosed with Bell's palsy. *Id*; Pl. Am. Compl., Ex. 2. The Plaintiff was treated with medications and drops to lubricate his left eye, which would not close due to the facial paralysis. Pl. Am. Compl. at 6-7. Plaintiff alleges that he has numerous physical symptoms including distorted hearing in one ear, difficulty talking, partial facial paralysis, and inability to breathe normally due to his left nostril not being able to flair. Pl. Am. Compl. at 7. Plaintiff states that his physical symptoms have had a negative impact on his social life and ability to interact with others. Pl. Am. Compl. 7-8.

In the time leading up to his diagnosis, Plaintiff was living in an area called the "2-up dormitory" within the prison. Pl. Am. Compl. at 9. Plaintiff claims that large patches of black mold and a pink fungus or bacteria-like substance grew on shower walls and that green mold sometimes covered the entire ceiling in the showers. Pl. Am. Compl. at 8. Prison staff was unable to control the growth despite "using bleach, power spraying, painting and scrubbing the affected areas." Pl. Am. Compl. at 9. Plaintiff also alleges that birds would roost in the attic of the dormitory and that when it rained, water contaminated with bird feces entered the dormitory's living area because the roof leaked. Pl. Am. Compl. at 9. Plaintiff contends that Defendant was

shown these living conditions while on a tour of 2-up dormitory and that Defendant did not correct them.[2] Pl. Br. at 2; Def. Br. Ex. D. (McGill Feb. 16, 2016 Deposition).

Plaintiff believes that these conditions led to his Bell's palsy diagnosis.[3] To support his claims, Plaintiff points to a number of fellow inmates who also contracted Bell's palsy,[4] Pl. Am. Compl. at 8, as well as one staff member, Pl. Br. at 2. Defendant does not dispute any of the preceding facts. However, Defendant argues that, among other things, Plaintiff has not demonstrated that the alleged conditions in 2-up dormitory were the cause of his Bell's palsy diagnosis. Def. Br. at 11-12.

---

[2] Plaintiff claimed in his deposition testimony that the Defendant took a tour of Plaintiff's housing unit and the people guiding Defendant's tour "point[ed] out the conditions [of the 2-up housing unit] to [Defendant]." Def. Br. Ex. D. (McGill Feb. 16, 2016 Deposition).

[3] Plaintiff also describes what he alleges is a history of conduct by the staff of East Jersey State Prison and personnel of the Department of Corrections that "disregard[ed] inmates [sic] health and safety." Pl. Am. Compl. at 9. Plaintiff claims that he and "dozens of other prisoners contracted a contagious stomach virus from food that was served in the messhall [sic] and no preventative measures were taken to halt the spread of the disease." Pl. Am. Compl. at 9. Plaintiff adds that during the mid-1990s, plaintiff and other inmates were involved in an "illegal asbestos removal project" without being "given adequate training or safety equipment." Pl. Am. Compl. at 9-10. Plaintiff also alleges that the Department of Corrections had test results showing the Plaintiff has Hepatitis-C and but did not inform Plaintiff. Instead, Plaintiff learned that he had Hepatitis-C from an independent test 14 years later. Pl. Am. Compl. at 10-11. Plaintiff lastly alleges that the Department of Corrections engaged in unhealthy dental practices in its prisons. Pl. Am. Compl. at 10. None of these claims, except for the asbestos, are directly relevant to this case, but appear to have been provided by Plaintiff as proof of a course of conduct that neglects the well-being of the inmates. As to the asbestos, Plaintiff testified during his deposition that he did not know whether it contributed to his Bell's palsy.

[4] Plaintiff alleges that an inmate "known as Imam Shariff once had the same ailment," "an inmate known as Nat" had Bell's palsy twice, an "inmate known as Omega" has similar symptoms, and an "inmate named David Huff who slept two beds away from the plaintiff contracted the same disease." Pl. Am. Compl. at 8. Huff submitted a signed declaration in support and indicated that he was diagnosed with Bell's palsy after being assigned to clean the showers. Pl. Am. Compl., Ex. 6 (Huff Declaration).

### ii. Grievance Process

If and when Plaintiff used various remedial methods within the prison system between the date of his diagnosis (Dec. 4, 2011) and the filing of first complaint (Dec. 9, 2013) are also disputed. Defendant states that during this period, while Plaintiff was incarcerated at East Jersey State Prison and Northern State Prison, Plaintiff filed no grievance forms related to his Bell's palsy symptoms or diagnosis. Def. Br. at 7-9. Defendant first asserted that while Plaintiff was incarcerated at Northern State Prison, Plaintiff filed no grievances on any matters.[5] Def. Br. at 7; Def. Br., Ex. B (Rivera Declaration). However, Defendant later clarified that Plaintiff did not file any grievances at Northern State Prison related to his Bell's palsy symptoms or diagnosis. Def. Opp. Br. at 3-4. Defendant alleges that while Plaintiff was incarcerated at East Jersey State Prison, Plaintiff filed eight grievances on a variety of subjects, but none related to his Bell's palsy diagnosis. Def. Br. at 8-9; Def. Br., Ex. A (Parker-Foreman Declaration (unsigned)); D.E. 38 (Parker-Foreman Declaration (signed)).

Plaintiff responds that he made numerous complaints about his medical condition and its connection to the conditions in the prison, but Plaintiff contends that "his complaints were either

---

[5] Jaqueline Rivera, who serves as the Inmate Remedy Coordinator at Northern State Prison, stated that Plaintiff "was at Northern State Prison from March 13, 2009 through November 1, 2010." Def. Br., Ex. B (Rivera Declaration). Further, Rivera stated that she "conducted a search at Northern State Prison for Inmate Remedy Forms filed by [Plaintiff]. There was no record that McGill filed any Inmate Remedy Forms while at Northern State Prison." Def. Br., Ex. B (Rivera Declaration). Plaintiff claims, however, that Rivera's statement is refuted by documents that he attached to his brief in support of summary judgment that appear to show that Plaintiff filed complaints (unrelated to his Bell's palsy) on an Inmate Remedy System Form on March 29, 2009 and on July 30, 2009. Pl. Br. Ex. Defendant responds that "Rivera's search was for IRFs filed after [Plaintiff's diagnosis] and her statement that plaintiff did not file any IRFs while at Northern State Prison related only to that timeframe." Def. Opp. Br. at 3-4. Plaintiff was diagnosed with Bell's palsy on December 4, 2011. Pl. Am. Compl. at 6. Defendant further notes that Plaintiff's attachments nevertheless do not relate to his Bell's palsy.

ignored, or he was redirected by prison officials to use a method of problem resolution other than the prison's inmate remedy system." Pl. Br. at 2. Plaintiff also indicates that he mailed a Notice of Tort Claim form to the Department of Corrections on March 2, 2012. Pl. Am. Compl. at 11; Pl. Am. Compl., Ex. 11, 12. Plaintiff claims that he never received a response. Pl. Am. Compl. at 11.

### B. Procedural History

On December 9, 2013, Plaintiff filed a Complaint. D.E. 1. On February 19, 2014, Plaintiff filed an Amended Complaint. D.E. 2. On July 27, 2011, Plaintiff's request to proceed *in forma pauperis* was granted, and Plaintiff's Amended Complaint was filed. D.E. 3.

On January 23, 2015, Defendant filed a motion to dismiss, D.E. 10, and on March 9, 2015, Plaintiff filed a brief in opposition. D.E. 12. On June 22, 2015, Judge Wigenton denied Defendant's motion without prejudice. D.E. 14. On July 2, 2015, Plaintiff filed an Answer to the Amended Complaint. D.E. 15.

On February 10, 2017, Defendant filed the current motion for summary judgment. D.E. 37. On April 10, 2017, Plaintiff filed a cross-motion for summary judgment. D.E. 39. On June 5, 2017, Defendant filed a reply to Plaintiff's cross motion for summary judgment. D.E. 44.

Plaintiff asserts a violation of the Eighth Amendment pursuant to Section 1983. Defendant argues that summary judgment is appropriate because Plaintiff has not exhausted his administrative remedies under the Prison Litigation Reform Act ("PLRA"), because Plaintiff has failed to show that Defendant was personally involved in the alleged constitutional violations, because Plaintiff has failed to show any causal link between the alleged conditions in the prison and Plaintiff's Bell's palsy, and because that Defendant is entitled to qualified immunity. Plaintiff argues that summary judgment is appropriate because the Defendant knew about the conditions in the prison and did nothing to ameliorate the problems—problems that ultimately caused Plaintiff's

Bell's palsy. Because the Court finds the causation issue dispositive, it does not reach the other arguments that were raised except to address the exhaustion issue.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify

specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

Plaintiff brings his claims pursuant to 42 U.S.C § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a valid claim for relief under Section 1983, a plaintiff must first allege a violation of a right secured by the Constitution or laws of the United States and, second, a plaintiff must allege that the violation was caused or committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

7

Without explicitly citing it, Plaintiff makes an allegation that his Eighth Amendment rights were violated.[6] The Eighth Amendment provides protections for convicted and sentenced prisoners from cruel and unusual punishment. *Hubbard v. Taylor*, 399 U.S. 150, 164 (3d Cir. 2005). Though "[t]he Constitution 'does not mandate comfortable prisons,'" prison conditions must be humane. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

To state an Eighth Amendment claim based on conditions of confinement, "an inmate must allege both an objective element—that the deprivation was sufficiently serious—and a subjective element—that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir.1996) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)). A deprivation is "sufficiently serious" when an inmate is denied "the minimal civilized measure of life's necessities." *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). "A prison official demonstrates deliberate indifference if he knows of and disregards an excessive risk to the inmate's health or safety." *Ham v. Greer*, 269 F. App'x 149, 151 (3d Cir. 2008). A court may find deliberate indifference based on the obvious nature of a risk. *See Beers Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (finding that "subjective knowledge on the part of the official can be proved by circumstantial evidence to the

---

[6] Plaintiff does not mention the Eighth Amendment in any of his papers, however it is clear to the Court that the Plaintiff is describing Eighth Amendment claims. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (describing how the Court holds "the allegations of the *pro se* complaint . . . to less stringent standards than formal pleadings drafted by lawyers.").

8

effect that the excessive risk was so obvious that the official must have known of the risk") (quoting *Farmer*, 511 U.S. at 842).

### A. Exhaustion of Available Administrative Remedies Under the PLRA

Defendant first argues that summary judgment is appropriate because Plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), before filing this Section 1983 claim in federal court. Def. Br. at 5-9. Plaintiff contends that he exhausted his administrative remedies because he filed grievances related to his Bell's palsy and the prison officials lost or did not respond to them. Pl. Br. at 4. Plaintiff alleges that prison officials used "diversion tactics," including their discretion to "redirect [Plaintiff] to use a procedure that is outside of the Inmate Remedy System."[7] Pl. Br. at 4.

42 U.S.C. Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion is a mandatory requirement under the PLRA. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (finding that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion"). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules' .

---

[7] Plaintiff refers to N.J.A.C. 10A:1-4.3(b)1, which states that the "IRSF-103 Staff Redirection Form" "is available by accessing the Department of Corrections computer network (DOCnet)." Pl. Br. at 4.

. . defined . . . by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 217 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81 at 88 (2006)).

"An inmate . . . must exhaust available remedies, but [an inmate] need not exhaust *unavailable* ones." *Ross v. Blake*, 136 S. Ct. at 1858 (emphasis added). In *Ross*, the Supreme Court described three circumstances under which remedies are "unavailable." First, a remedy is unavailable under the PLRA if the remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," even if "regulations or guidance may promise" that the procedure is available. *Id.* at 1859; *see Booth v. Churner*, 532 U.S. 731, 736, 738 (2001). Second, a remedy is unavailable when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859. Lastly, a remedy is not available if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The Third Circuit has made clear that the PLRA's exhaustion requirement applies to institutional grievance procedures described in the New Jersey Department of Corrections Inmate Handbook. *Concepcion v. Morton*, 306 F.3d 1347, 1355 (3d Cir. 2002). Therefore, inmates must exhaust any remedies available in their handbooks. *Id; see Paladino v. Newsome*, 2013 WL 3270987, at *6 (D.N.J. June 27, 2013) (finding that "to properly exhaust administrative remedies, a prisoner must comply with any grievance procedures described in inmate handbooks."). In New Jersey, the NJDOC Inmate Remedy Form ("IRF") process includes (1) the opportunity to submit an "Inmate Grievance Form" or "Inmate Inquiry Form" and (2) an opportunity to appeal a final decision or finding. N.J.A.C. 10A:1-4.4(c). Under N.J.A.C. 10A:1-4.4(d), "an 'Inmate Inquiry Form,' and/or 'Inmate Grievance Form,' and an 'Administrative Appeal' . . . must be utilized and

10

fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, and/or complaints." N.J.A.C. 10A:1-4.4(d)

"[F]ailure to exhaust is an affirmative defense under the PLRA," meaning that the burden is placed on the defendants and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) ("We thus join the many other circuits that have held that failure to exhaust is an affirmative defense to be pleaded by the defendant."). However, when a failure to exhaust administrative remedies is shown, summary judgment may be granted. *See Terrell v. Benfer*, 429 Fed.Appx. 74, 77 (3d Cir. 2011) (holding that "summary judgment was appropriate because there was no genuine issue of material fact as to [an inmate's] failure to exhaust administrative remedies"). "The availability of administrative remedies to a prisoner is a question of law to be determined by a judge." *Shumanis v. Lehigh County*, 675 Fed.Appx. 145, 147 (3d Cir. 2017) (quoting *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)); *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013) (holding that "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts").

Courts in this District have split on whether to find a genuine issue of material fact when a plaintiff contends that they exhausted their remedies, but the defendant claims that there is no record of such exhaustion. *See Watkins v. Merriel*, 2015 WL 5722819, at *8-10 (D.N.J. Sept. 29, 2015) (finding that there were genuine issues of disputed facts regarding whether an inmate filed IRF appeals when there was "at least some record evidence suggesting that Plaintiff did not receive responses from prison officials related to some IRFs he submitted"); *Paladino v. Newsome*, 2013 WL 3270987, at *8 (D.N.J. June 27, 2013) (holding that "Defendants have not met their burden of establishing that no genuine issue of material fact exists as to whether Plaintiff exhausted

11

administrative remedies"); *Ortiz v. Hayman*, 2008 WL 1319203, at *4 (D.N.J. Apr. 10, 2008) (holding that summary judgment is inappropriate when there was a dispute of fact whether plaintiff actually submitted an IRF when the plaintiff claims he sent an IRF and the defendants claim they never received an IRF); *but see Miller v. Ricci*, 2013 WL 1987255, at *2-3 (D.N.J. May 13, 2013) (granting summary judgment based on failure to exhaust administrative remedies when there was no evidence to support plaintiff's claim that he appealed his grievances).

Here, Defendant offers a written declaration signed by the Executive Assistant of East Jersey State Prison and a written declaration signed by the Inmate Remedy Coordinator at Northern State Prison, each stating that Plaintiff filed no Inmate Remedy Forms related to his Bell's palsy while incarcerated at each respective prison. Def. Br., Ex. A (Parker-Foreman Declaration (unsigned)), Def. Feb. 15, 2017 Letter, D.E. 38 (Parker-Foreman Declaration (signed)), Def. Br., Ex. B (Rivera Declaration). Plaintiff, on the other hand, contends that the remedy process was not "available" under the PLRA because the prison used "diversion tactics," including losing or not responding to Plaintiff's grievances. Pl. Br. at 4.

Obviously, the parties present different evidence as to the exhaustion issue. However, the Court does not reach the issue because Defendant's motion for summary judgment may be granted on other grounds.

### B. Causation

Defendant alternatively argues that summary judgment is appropriate because Plaintiff has failed to submit any appropriate evidence as to the causal connection between the conditions in 2-up dormitory and Plaintiff's Bell's palsy. Def. Br. at 11-12. Defendant argues that Plaintiff admitted that he "does not know if the alleged conditions at the prison caused him to get Bell's

palsy." Def. Br. at 11. Plaintiff did not respond to this specific argument in Plaintiff's motion for summary judgment.

"Proximate cause is an essential element of a claim seeking to establish liability under § 1983." *Tallman v. Barnegat Bd. of Educ.*, 43 F. App'x 490, 498 (3d Cir. 2002). Proximate cause under Section 1983 "simply incorporates the causation principles of common-law torts." *Tallman*, 43 F. App'x at 499 n.6 (citing *Stevenson v. Koskey*, 877 F.2d 1435 (9th Cir. 1989) and *Parrett v. City of Connersville*, 737 F.2d 690 (7th Cir. 1984)). "Although the question of proximate cause must often be submitted to the trier of fact, summary judgment is proper if the record cannot reasonably support a finding of proximate cause, and in prior § 1983 cases, [the Third Circuit has] upheld summary judgment on this basis." *Tallman*, 43 F. App'x at 498–99 (citing *Best v. Essex County*, 986 F.2d 54 (3d Cir. 1993) and *Commonwealth Bank & Trust Co. v. Russell*, 825 F.2d 12 (3d Cir. 1987)). Summary judgment is appropriate when a court cannot infer that the conditions of an inmate's confinement proximately caused the inmate's health problems. *See Edwards v. Northampton County*, 2016 WL 7654661, at *5-6 (E.D. Pa. Apr. 29, 2016) (granting summary judgment when the court was "unable to infer, absent expert testimony, that the conditions of [Plaintiff's] cell caused his MRSA infection."); *Hargis v. Atl. Cty. Justice Facility*, 2014 WL 1713461, at *8 (D.N.J. Apr. 28, 2014) ("Without expert testimony substantiating a causal link between the allegedly unconstitutional conditions at ACJF and Plaintiff's MRSA diagnosis, Plaintiff is unable to show a cognizable injury."); *Malles v. Lehigh Cty.*, 639 F. Supp. 2d 566, 581 (E.D. Pa. 2009) (dismissing a prisoner's Section 1983 Eighth Amendment claims against prison officials when "[t]here is indeed no evidence that more rigorous cleaning or any other measures would—or could—have prevented or reduced the likelihood of infection").

Here, the Court is unable to make a reasonable inference, absent expert testimony, that the specific conditions of 2-up dormitory as described in Plaintiff's Amended Complaint and motion for summary judgment were the proximate cause of Plaintiff's Bell's palsy. In fact, Plaintiff testified in his deposition that he did not know what actually caused his Bell's palsy. Def. Br. Ex. D. (McGill Feb. 16, 2016 Deposition). In response to a question asking whether Plaintiff is alleging that the prison conditions caused his Bell's palsy, Plaintiff replied by stating:

> It's outside of my expertise to say exactly if it was the green mold, the black mold, the orange bacteria, the bird feces. It's outside of my expertise to say exactly which one of these substances caused Bell's palsy. I don't know if it was the asbestos that caused Bell's palsy. I don't know if it was another contagious element that caused Bell's palsy. I'm saying that I have Bell's palsy. Numerous other people inside of this prison have Bell's palsy. . . . And I'm attributing the Bell's palsy to the conditions inside of this prison, because there's such a large amount of people inside of this prison that have Bell's palsy.

Def. Br. Ex. D. (McGill Feb. 16, 2016 Deposition). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his claim." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (citing *Celotex Corp.*, 477 U.S. at 322). Causation is an essential element of Plaintiff's Section 1983 Eighth Amendment claim that the conditions of his confinement caused his Bell's palsy. The causal nexus between prison conditions and an alleged resulting injury is generally proven through expert testimony. *See Hargis v. Atl. Cty. Justice Facility*, 2014 WL 1713461, at *7 (D.N.J. Apr. 28, 2014) (finding that how a pretrial detainee "acquired MRSA, how it manifested, how it is transmitted, and how it may affect him in the future"

are "issues of expert opinion for a medical expert in the field of infectious disease."); *Shaver v. CFG Healthcare*, 2011 WL 3882287, at *7 (D.N.J. Sept. 2, 2011) (finding that "[w]ithout an expert witness or report or some other credible evidence, a jury cannot reasonably conclude that an inmate contracted or suffers from TB or MSRA merely because that inmate is incarcerated in a prison with many other inmates and the prison may not satisfy some amorphous, undefined standard of health and cleanliness."). Plaintiff's conjecture about the potential causes of his Bell's palsy is not enough to show that there is a genuine issue of material fact as to causation. Plaintiff has pointed to several other persons who have been afflicted with Ball's palsy, however this evidence is not sufficient to prevent summary judgment on the issue of causation. Plaintiff did not cite any precedent to support his position[8] nor could the Court find any. Here, Plaintiff has not produced the necessary expert testimony to support his beliefs as to causation. Therefore, Defendant's motion for summary judgment is granted.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (D.E.37) is **GRANTED** and Plaintiff's cross-motion for summary judgment (D.E. 39) is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: October 3, 2017

John Michael Vazquez, U.S.D.J.

---

[8] By Plaintiff's position, the Court means that causation can be sufficiently established through Plaintiff's lay opinion that the circumstances caused his Bell's palsy and the fact that several other individuals (in proximity to Plaintiff) also suffered from the condition.

15